v.

**STATE of Alaska, Appellee.**

**No. A–1969.**

Court of Appeals of Alaska.

Nov. 6, 1987.

---

Raymond Funk, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

M.K., a minor, appeals an order of the superior court finding him unamenable to treatment as a minor and waiving children's court jurisdiction. AS 47.10.060.[1] We affirm the superior court's order.

## FACTS

During the early morning hours of May 30, 1986, M.K., at that time sixteen years of age, entered the house of Kenneth and Rita Harmon in Nuiqsut. He attacked the Harmons with an axe while they were asleep in bed. Kenneth Harmon died as a result of three axe wounds to the neck. Rita Harmon suffered approximately twelve axe wounds to her neck and back.

She survived, but one of the blows severed her spinal cord, leaving her permanently paralyzed from the waist down. A relative discovered the victims between 10:30 and 11:00 a.m. There was no evidence of a struggle or resistance by the victims. Police found clothing strewn about the bedroom and an axe, covered with blood and hair, at the foot of the bed.

There was no apparent motive or provocation for the offenses. It is undisputed that there is probable cause to believe that M.K. committed these offenses.

## THE MINOR

M.K. was born September 5, 1969. His parents were alcoholics. His father frequently physically abused his mother. M.K. and his two older sisters were adjudicated children in need of aid in 1979 on account of parental neglect. State supervision was terminated in 1981. Thereafter, M.K. lived in Nuiqsut with his father and stepmother.

In 1983 and 1984, M.K. was charged in the juvenile court with shoplifting, but both cases were informally adjusted. M.K. has never been institutionalized or placed on formal probation. He is apparently of above-average intelligence and has done well in school. He has distinguished himself as an athlete and has been a leader in church organizations.

During the investigation of the present offenses, M.K. was discovered to have committed two other offenses which had previously been unsolved. On March 9, 1986, at 2:00 a.m., M.K. fired a rifle into the home of a police officer. The officer was in the house but was not injured. In April of 1986, M.K. and a friend burglarized a store

---

1. Alaska Statute 47.10.060 states in pertinent part:

    (a) If the court finds at a hearing on a petition [for waiver] that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this subsection, the minor may be prosecuted as an adult.

    . . . .

    (d) A minor is unamenable to treatment under this chapter if the minor probably cannot be rehabilitated by treatment under this chapter before reaching 20 years of age. In determining whether a minor is unamenable to treatment, the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.

at 2:30 a.m. and stole about $200 so the boys could take a trip to Anaktuvuk Pass to see their girlfriends. The boys stole bolt cutters from the village fire station to cut the padlock off the door of the store.

M.K. had been a habitual user of marijuana for several years. He told a number of people, however, that he was "not stoned" on the morning of the attacks.

The trial court held an extensive waiver hearing and heard from numerous witnesses. Among the witnesses were Dr. David Coons, a psychiatrist; Dr. James Harper, a psychologist; Dr. Dennis Greene, a psychologist; and, Dr. Steven Parker, a psychologist. The court also reviewed written reports from Drs. Coons, Harper, Greene, and Parker. The expert testimony was generally inconclusive. There were suggestions that a one-year continuance would give the experts an opportunity to observe M.K.'s progress in custody and better evaluate the prognosis for rehabilitation. At the conclusion of the hearing, Judge Jeffery denied the defendant's request for a one-year continuance in order to further test his amenability to juvenile treatment and rendered an oral decision granting the state's motion for waiver. The oral motion was later supplemented by written findings of fact and conclusions of law.

## DISCUSSION

██ M.K. first argues that the trial court erred in failing to grant him a nine- to twelve-month continuance to permit further psychiatric and psychological treatment in order to test M.K.'s amenability to juvenile treatment. Given the record in this case, we are satisfied that Judge Jeffery did not abuse his discretion in denying the continuance. After weighing the possible benefits of a continuance to the minor against the likely prejudice to the state if a decision was delayed, the trial court could have properly concluded that a continuance was not warranted. *See W.M.F. v. State,* 723 P.2d 1298, 1301-02 (Alaska App.1986).[2]

██ M.K. next argues that the trial court erred in not applying the clear and convincing evidence standard to determine amenability to juvenile treatment. The trial court applied a preponderence of the evidence test, which is the proper standard. *In re F.S.,* 586 P.2d 607, 611-12 (Alaska 1978), *overruled on other grounds, State v. F.L.A.,* 608 P.2d 12 (Alaska 1980); *W.M.F. v. State,* 723 P.2d at 1300-01; *C.G.C. v. State,* 702 P.2d 648, 649 n. 1 (Alaska App.1985).

██ Finally, M.K. argues that the trial court erred in finding that the state had met its burden of proving M.K. not amena-

**2.** The state argues that *W.M.F.* should be reconsidered. The state reads that case as authorizing lengthy continuances—in some cases up to eighteen months—on a mere showing that extended observation of a juvenile in custody would aid experts in predicting his or her amenability to treatment. The state is concerned that such a showing could be made in virtually every case, and if continuances resulted, they would defeat the legislative purposes manifested in enacting AS 47.10.060. *Cf. State v. J.D.S.,* 723 P.2d 1278 (Alaska 1986) (courts may not deny waiver on theory that minor's relative prospects for rehabilitation are better in the juvenile system than in the adult system).

In the state's view, a lengthy continuance would invariably frustrate the juvenile's and the community's right to a speedy trial and jeopardize the state's ability to prove its case. At the same time, the juvenile would be uncertain of the future, and unlikely to enter treatment programs necessary for rehabilitation. Finally, the state is concerned that lengthy continuances would be particularly attractive to trial judges faced with the ex-

tremely hard questions presented by a waiver proceeding.

We assume that a trial judge exercising his or her discretion would weigh and consider the state's concerns. We are unaware of any case in which such a continuance has in fact been granted and thus cannot conclude that trial judges will abuse their power to continue cases. Certainly, the court should consider the length of a requested continuance in deciding whether to grant it. We are satisfied that trial judges will not grant continuances, even short ones, without good cause and that a long continuance would normally require a particularized showing of need that could not be made in the typical case. It is unlikely that a moving party will meet the burden of justifying a lengthy continuance with mere speculation by experts about the passage of time in custody as an aid in predicting amenability to treatment. Nevertheless, we reaffirm our holding that trial courts have discretion to grant continuances in those unusual cases in which the court is satisfied that justice requires it.

ble to treatment as a juvenile. The trial court felt that M.K. was amenable to treatment and could be rehabilitated in a three- to seven-year period. He concluded, however, that M.K. could not be rehabilitated in the roughly two and one-half years remaining before he reached twenty years of age, the mandatory termination date for juvenile treatment. After carefully reviewing the record and taking into account the seriousness of the offense, M.K.'s current age, and the inconclusive psychiatric and psychological testimony, we are satisfied that reasonable men and women could differ as to M.K.'s amenability to treatment as a juvenile. Therefore, the trial court's decision is sustained. *See, e.g., C.G.C.,* 702 P.2d at 650–51.

The judgment of the superior court is AFFIRMED.